E-FILED
Tuesday, 21 July, 2026  10:59:02 AM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>       Plaintiff,<br><br>v.<br><br>CHARLES DAVIS,<br>       Defendant. | Case No. 4:98-cr-40066-JEH-RLH |

**Order**

Now before the Court is Defendant Charles Davis's Amended Motion for Early Termination of Supervised Release (D. 55) and the Government's response opposing that motion (D. 57). For the reasons stated *infra*, the motion is granted.

**I**

**A**

Davis's criminal history spans several decades and includes serious offenses involving violence, firearms, and narcotics. In 1991, he participated in the shooting death of an individual during a gang-related dispute in Chicago. (D. 57 at ECF p. 2).[1] Davis was convicted of first-degree murder in Illinois state court and sentenced to a thirty-year term of imprisonment, to be served consecutive to the federal sentence imposed in this case. *Id.* at ECF pp. 2-3. He ultimately served approximately seven years and nine months of that sentence before being released. *Id.* at ECF p. 3.

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

Davis continued to engage in criminal conduct throughout the 1990s. His convictions included offenses involving firearms, cocaine distribution, and repeated violations of probation. *Id.* at ECF pp. 3-7. During that period, he also occupied a leadership position within the Gangster Disciples organization, directing the distribution of crack cocaine in the Quad Cities area. *Id.* at ECF p. 3.

The present federal conviction arose from Davis's role in a large-scale crack cocaine trafficking operation. During 1998, he regularly transported kilogram quantities of cocaine from Chicago for distribution in the Quad Cities and admitted responsibility for distributing substantial quantities of crack cocaine. *Id.* at ECF p. 4. The Court sentenced Davis to 236 months' imprisonment, later reduced to 188 months, followed by an eight-year term of supervised release. *Id.* at ECF p. 4.

**B**

Davis began his first federal term of supervised release in November 2020 after completing both his federal sentence and the remainder of his state sentence. *Id.* at ECF p. 5. His adjustment to supervision was unsuccessful. He initially failed to report to the United States Probation Office, tested positive for marijuana shortly after reporting, and committed additional violations that culminated in revocation proceedings. *Id.* at ECF pp. 5-7.

Most significantly, in February 2022 Davis became involved in a shooting in a residential neighborhood in Moline, Illinois. Following an evidentiary hearing, the Court rejected Davis's claim that his conduct was justified by self-defense or necessity and found that he had committed a new law violation while on supervision. *Id.* at ECF pp. 5-7. In addition to the firearm offense, the Court considered Davis's earlier failures to comply with supervision conditions, including his failure to report and positive drug test. The Court revoked

supervised release, imposed a sentence of twenty-seven months' imprisonment, and ordered a new four-year term of supervised release. *Id.* at ECF p. 7.

### C

Davis commenced his current term of supervised release following completion of the revocation sentence. Since then, his performance has differed substantially from his earlier period of supervision. (D. 53 at ECF pp. 2-3). He has incurred no new criminal convictions or law violations and has complied with the significant conditions imposed following revocation. *Id.* at ECF p. 7.

His supervision has not been entirely without incident. On two occasions he submitted monthly supervision reports after the required deadline, and in January 2026 he relocated from his approved residence without first obtaining permission from the United States Probation Office. (D. 57 at ECF p. 8). Those violations resulted in corrective action but did not involve criminal conduct. The record further reflects that Davis has been approved for requested travel, including recent travel outside the district, and has otherwise maintained compliance with the terms of supervision. (D. 53 at ECF p. 2). His supervising probation officer nevertheless opposes early termination. *Id.* at ECF p. 2.

Although Davis's current Post Conviction Risk Assessment ("PCRA") classifies him as High with a Category 3 violence indicator, the parties agree that the assessment is only one consideration among the factors governing early termination under 18 U.S.C. § 3583(e)(1). (D. 53 at ECF p. 2; D. 57 at ECF p. 1).

### II

Davis argues that early termination is warranted because he has served more than two years of his current four-year term of supervised release without committing any new criminal offenses. He contends that, following the revocation of his initial term of supervision, he has complied with the substantial

majority of his supervision conditions, maintained stability in the community, and demonstrated that he no longer requires the level of oversight provided by the United States Probation Office. Davis further asserts that his recent supervision violations—two untimely monthly reports and an unauthorized change of residence—were administrative in nature and do not undermine his otherwise successful adjustment to supervision. He also relies upon recent authority from this District emphasizing that § 3583(e)(1) does not require extraordinary circumstances and argues that the purposes of supervised release have been fulfilled. R. 53 at 3–7.

In support of his motion, Davis also states how he is determined to make up for lost time with his 7 adult children and 14 grandchildren. He is married and hopes to focus on family. Davis maintained employment until his health began to decline. He was diagnosed with heart failure, COPD, and asthma and now receives disability benefits. He maintains that continued supervision imposes restrictions that are no longer necessary to accomplish the statutory purposes of supervised release and that early termination would therefore be consistent with both the interests of justice and the factors set forth in 18 U.S.C. §§ 3553(a) and 3583(e). R. 53 at 4–8.

The Government opposes the motion, arguing that the relevant § 3553(a) factors continue to weigh against early termination. It emphasizes the seriousness of Davis's criminal history, including his convictions for first-degree murder and federal narcotics trafficking, as well as the revocation of his first term of supervised release following multiple violations culminating in new criminal conduct. According to the Government, those circumstances demonstrate that continued supervision remains necessary to protect the public and deter future criminal conduct. R. 57 at 4–8.

The Government further relies upon Davis's current Post Conviction Risk Assessment, which classifies him as High with a Category 3 violence indicator, and argues that the assessment weighs strongly against terminating supervision. Although acknowledging Davis's improved performance on his present term of supervision, the Government contends that compliance with supervision conditions is generally expected and, standing alone, does not warrant early termination. It also points to Davis's recent administrative violations—including late monthly reports and an unauthorized residence change—as evidence that continued oversight remains appropriate. Finally, the Government cites recent Federal Probation research to argue that courts should exercise caution when considering early termination for supervisees classified as high risk. R. 57 at 8–12.

### III

Under 18 U.S.C. § 3583(e)(1), a district court may terminate a term of supervised release after the expiration of one year if, after considering the applicable factors set forth in 18 U.S.C. § 3553(a), it concludes that early termination is warranted by a defendant's conduct and the interests of justice.

Among the relevant considerations are the nature and circumstances of the offense, the defendant's history and characteristics, the need to deter criminal conduct, the need to protect the public, the need to provide educational or correctional treatment, the advisory sentencing framework, pertinent policy statements, the avoidance of unwarranted sentencing disparities, and any outstanding restitution obligations. 18 U.S.C. §§ 3553(a), 3583(e)(1).[2]

The decision whether to terminate supervised release rests within the Court's sound discretion. *United States v. Nonahal*, 338 F.3d 668, 671 (7th Cir. 2003).

---

[2] Sub-section 3553(a)(3) is excluded from the factors a court must consider as set forth in § 3583(e), and subsections (a)(4) and (a)(5) only have applicability to imposition and revocation of a supervised release term, not an early termination. Subsection (a)(7) relates to restitution, which is inapplicable in this case.

Compliance with supervision conditions alone does not automatically entitle a defendant to early termination, but neither must a defendant demonstrate extraordinary or exceptional circumstances before relief may be granted. *United States v. Crisp*, 770 F. Supp. 3d 1124 (C.D. Ill. 2025). Rather, the Court must evaluate the record as a whole and determine whether continued supervision remains necessary in light of the purposes identified in § 3553(a).

## IV

Davis's criminal history includes serious and violent conduct, and the Court does not discount that history. The question before the Court is not whether Davis committed serious offenses in the past. He unquestionably did. Nor is the question whether his first period of supervised release ended unsuccessfully. It did. Rather, the issue presented by § 3583(e)(1) is whether, after considering the applicable statutory factors, Davis's conduct on his present term of supervision and the interests of justice warrant early termination.

The Court begins with the nature and circumstances of the offense and Davis's history and characteristics. 18 U.S.C. § 3553(a)(1). Davis's underlying convictions are undeniably serious. His criminal history includes first-degree murder, repeated firearms offenses, and significant narcotics trafficking. (D. 57 at ECF pp. 1-7). Those offenses reflect a prolonged period of violent and criminal conduct and cannot be minimized.

At the same time, § 3583(e) requires the Court to evaluate the defendant as he presently stands rather than solely by reference to conduct that resulted in convictions and lengthy terms of imprisonment decades ago. Davis has completed the custodial sentences imposed for both his state murder conviction and his federal drug conviction. More recently, when he violated the conditions of his initial term of supervised release, the Court revoked supervision, imposed an additional twenty-seven months of imprisonment, and ordered a new four-year

6

term of supervised release specifically tailored to address that misconduct. *Id.* at ECF p. 7. The Court therefore does not consider the 2022 revocation in isolation. Rather, it considers whether the objectives of that revocation sentence have now been achieved through Davis's conduct on the current term of supervision.

The record reflects a meaningful difference between Davis's first and second periods of supervision. Unlike the first term, the present term has not been marked by new criminal conduct. Davis has now completed more than two years of supervision without committing another law violation. (D. 53 at ECF p. 3). Although he has twice submitted monthly reports after the required deadline and once changed residences without prior approval, those violations are administrative in nature and bear little resemblance to the conduct that resulted in revocation. (D. 57 at ECF p. 8). They demonstrate imperfect compliance, but they do not suggest a return to the pattern of criminal behavior that previously justified continued supervision.

The Government nevertheless argues that early termination would be inconsistent with the need to protect the public because Davis's current PCRA assessment classifies him as High with a Category 3 violence indicator. *Id.* at ECF pp. 10-11. That concern is not insignificant. The Court affords appropriate weight to the professional judgment reflected in the assessment, particularly given Davis's criminal history and prior revocation.

The PCRA assessment, however, is one consideration among many. It does not itself determine whether continued supervision is warranted under § 3583(e)(1). Nor does it relieve the Court of its obligation to evaluate the defendant's actual conduct while on supervision. Here, the Government relies in part upon a recent Administrative Office study examining early termination decisions performed by Thomas H. Cohen, the Branch Chief of the Data Unit for the Probation and Pretrial Services Office of the Administrative Office of the United

States Courts (AO) entitled, *Early Termination: Shortening Federal Supervision Terms Without Endangering Public Safety.* Yet that same study indicates that, among supervisees classified as high risk, early termination was not associated with a statistically significant increase in post-supervision rearrest rates when compared to similarly situated supervisees who completed their full terms of supervision. While that research is not dispositive, it suggests that a high PCRA score alone does not necessarily establish that continued supervision will better protect the public. Instead, the Court must consider the assessment together with Defendant's demonstrated performance on supervision.

Davis's performance on his present term weighs in his favor. Since his release following revocation, he has not engaged in new criminal conduct, has complied with the substantial majority of his supervision conditions, and has maintained sufficient stability such that his interactions with the Probation Office have become largely routine. The Court recognizes that his supervising probation officer opposes early termination. (D. 57 at ECF p. 2). That recommendation deserves careful consideration because probation officers possess unique familiarity with defendants under their supervision. Nevertheless, the ultimate determination rests with the Court, which must independently assess the statutory factors and the interests of justice.

The remaining § 3553(a) factors likewise do not counsel against early termination. Continued supervision undoubtedly provides some measure of oversight. But supervision is intended to facilitate a defendant's successful transition into the community, not to continue solely because supervision has not yet expired. *See Johnson v. United States*, 529 U.S. 53, 59 (2000). Where a defendant has demonstrated sustained compliance following a prior revocation, the Court must consider whether additional supervision continues to serve a meaningful rehabilitative or public-safety purpose.

8

Nothing in the present record suggests that Davis currently requires services available through the Probation Office that cannot be maintained independently. Nor does the record indicate that continued supervision is necessary to ensure compliance with restitution or other financial obligations. Although Davis remains subject to Illinois's Murderer and Violent Offender Against Youth Registry, those registration requirements exist independently of federal supervised release and will continue regardless of the disposition of this motion.

The Court is mindful that reasonable judges could reach a different conclusion on this record. Davis's criminal history is extensive, and his first term of supervised release ended unsuccessfully. Those facts weigh against early termination and warrant careful consideration. But § 3583(e)(1) requires more than a retrospective assessment of a defendant's past. It requires the Court to determine whether continued supervision remains justified in light of the defendant's present conduct and the interests of justice. On balance, the Court concludes that it does not.

Davis has now demonstrated for more than two years that he can remain law-abiding following the revocation of his first term of supervised release. (D. 53 at ECF pp. 2-4). His recent violations, while not insignificant, do not undermine that broader record of compliance. After weighing the applicable statutory factors, the Court concludes that continued supervision would provide only marginal additional benefit while imposing restrictions that are no longer necessary to accomplish the purposes of supervised release. Accordingly, early termination is appropriate.

## V

For the foregoing reasons, Defendant Charles Davis's Amended Motion for Early Termination of Supervised Release (D. 55) is granted.

*It is so ordered.*

Entered on July 21, 2026

<u>s/Jonathan E. Hawley</u>
U.S. DISTRICT JUDGE